## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

UNITED STATES OF AMERICA     *
                                  *

v.                                     *        Criminal No. 14-00054-CG

                                          *

THOMAS JASON STRICKLAND     *

## PLEA AGREEMENT

The abovecaptioned defendant, represented by his counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### RIGHTS OF THE DEFENDANT

1.     The defendant understands his rights as follows:

     a.     To be represented by an attorney;

     b.     To plead not guilty;

     c.     To have a trial by an impartial jury;

     d.     To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense; and

     e.     To not be compelled to incriminate himself.

### WAIVER OF RIGHTS AND PLEA OF GUILTY

2.     The defendant waives rights b through e, listed above, and pleads guilty to Count 1 of the Indictment, charging a violation of Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute methamphetamine, a Schedule II controlled substance.

3.  The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4.  The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5.  The defendant is not under the influence of alcohol, drugs, or narcotics.  He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.  The defendant has had the benefit of legal counsel in negotiating this Plea Agreement.  He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charge which has been brought against him.  The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offense.

7.  The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt.  The defendant and his counsel have discussed possible defenses to the charge.  The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8.  A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing.  The Factual Resume is incorporated by

2

reference into this Plea Agreement.  The defendant and the United States agree that the Factual Resume is true and correct.  Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

9.      This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement.  There have been no promises from anyone as to the particular sentence that the Court will impose.  The defendant is pleading guilty because he is guilty.

10.     The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter.  This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTY

11.     The maximum penalty the Court could impose as to Count 1 of the Indictment is:

a.      10 years to life imprisonment;

b.      A fine not to exceed $10,000,000;

c.      A term of supervised release of  5 years, which would follow any term of imprisonment.  If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

3

d.  A mandatory special assessment of $100;

e.  Criminal forfeiture.

## SENTENCING

12.  The Court will impose the sentence in this case.  The United States Sentencing Guidelines are advisory and do not bind the Court.  The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation.  The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines.  The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

13.  The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14.  The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation.  Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

4

15.     Both the defendant and the United States are free to allocute fully at the time of

sentencing.

16.     The defendant agrees to tender $100 to the U.S. District Court Clerk in

satisfaction of the mandatory special assessments in this case.  The United States

reserves the right to withdraw any favorable recommendations it may agree to

within this document if the defendant fails to pay the special assessment prior to

or at the time of his sentencing.

## FORFEITURE

17.     The defendant agrees to confess the forfeiture to the United States of all

properties which represent proceeds of his criminal activities or which facilitated

any aspect of these illegal activities.

## FINANCIAL OBLIGATIONS

18.     The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit

report in order to evaluate the defendant's ability to satisfy any financial

obligation imposed by the Court. In order to facilitate the collection of financial

obligations to be imposed in connection with this prosecution, the defendant

agrees to disclose fully all assets in which the defendant has any interest or over

which the defendant exercises control, directly or indirectly, including those held

by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

19.     The United States will not bring any additional charges against the defendant

related to the facts underlying the Indictment and will move to dismiss all

remaining counts once sentence is imposed.  This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

20.    The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

## APPLICATION OF U.S.S.G. § 5K1.1 AND/OR FED.R.CRIM.P. 35

21.    The defendant understands and agrees that he has no right to cooperate, and that the decision whether to allow him to cooperate is reserved solely to the United States in the exercise of its discretion.  If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

    a.    The defendant shall fully, completely, and truthfully respond to all questions put to him by law enforcement authorities regarding the underlying facts of the offense(s) with which he is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which he has information or knowledge.

    b.    The defendant acknowledges that he understands that he shall provide truthful and complete information regarding any offense about which he has knowledge or information regardless of whether law enforcement authorities question him specifically about any such offense.  This provision requires the defendant to divulge all information available to

6

him even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c.  The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which his cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance he shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d.  If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e.  The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in his possession or

7

under his control and which are relevant to his participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense.  This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f.  The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g.  If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable.  The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the

8

defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should he provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h. The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by him from his illegal activities or obtained by others associated with him or of which he has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

(2) permit the United States to initiate and proceed with the

9

prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during his breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i.   Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during his cooperation. The defendant acknowledges and agrees that the information that he discloses to the United States pursuant to this agreement may be used against him in any such prosecution.

j.   The United States and the defendant agree that the defendant will continue his cooperation even after he is sentenced in the instant matter. His failure to continue his cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Indictment, which are to be dismissed in accordance with this agreement.

Under these circumstances, the defendant expressly waives any rights he may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

22.    As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence (including a sentence imposed on revocation of probation or supervised release) in any district court or appellate court proceedings.

    a.    **EXCEPTIONS.**  The defendant reserves the right to timely file a direct appeal challenging:

        (1)    any sentence imposed in excess of the statutory maximum;

        (2)    any sentence which constitutes an upward departure or variance from the advisory guideline range.

    In addition, the defendant further reserves the right to claim ineffective assistance of counsel in a direct appeal or a petition filed pursuant to Title 28, United States Code, Section 2255.

23.    If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

24.    The defendant further reserves the right to timely move the district court for an

amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

25.    If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

26.    The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant.  In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge.  In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

27.    In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

28.    This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

KENNETH R. BROWN
UNITED STATES ATTORNEY

Date: 8/8/14

Vicki M. Davis, Criminal Chief
Assistant United States Attorney

Date: 8/6/14

Gloria A. Bedwell
Assistant United States Attorney

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 9/10/14

Thomas Jason Strickland
Defendant

I am the attorney for the defendant. I have fully explained his rights to him with respect to the offense(s) charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 9/10/14

Daniel L. McCleave, Esq.
Defense Counsel

13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

UNITED STATES OF AMERICA        *

                                   *

v.                               *       Criminal No.14-00054-CG

                                   *

THOMAS JASON STRICKLAND     *

### FACTUAL RESUME

The abovecaptioned defendant admits the allegations of Count 1 of the Indictment.

### ELEMENTS OF THE OFFENSE

**Count One**:   The defendant understands that in order to prove a violation of Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute methamphetamine, as charged in Count One of the Indictment, the United States must prove the following beyond a reasonable doubt:

First, that two or more individuals came to a mutual understanding to commit an unlawful act, in this case, the possession with intent to distribute methamphetamine; and second, that the defendant, knowing of the unlawful purpose of the plan, knowingly and intentionally joined in the plan; and third, that at least 50 grams of methamphetamine was involved in the conspiracy.

### OFFENSE CONDUCT

The defendant admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case.   This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for his plea of guilty.   The statement of facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement.

#### Facts

1

On February 11, 2014, members of the Mobile County Sheriff's Office recieved information from a cooperating defendant (CD) who has been charged with possession of controlled substance charge with the Baldwin County Sheriff's Office.  CD provided information about some of the members of the conspiracy who were involved in the distribution of methamphetamine ice. Included amoung the names discussed was a white male, "Jamie," who lived in Mobile and who sold methamphetamine ice.  CD provided the Mobile deputies a list of phone numbers for "Jamie" and pointed out the location where "Jamie" lived, which was a residence he shared with a female CD knew as "Biker Chick," who was subsequently identified as Janine Turner.  CD stated that he went through "Jaime" to get methamphetmine ICE from "Biker Chick," but that he had set up a deal with "Jaime" and "Biker Chick" delivered the methamphetamine ICE to him.  CD also stated that he could presently purchase methamphetamine ice from "Jamie."

On or about February 28, 2014, Deputy J.T. Sullivan received information that a white male subject known as Thomas Jason Strickland (aka J-Red), and other subjects at Strickland's residence on East Carlton Acres Drive where they were cooking methamphetamine.  The anonymous source stated that Strickland and one of the others were in possession 30 boxes of pseudoephedrine and were actively engaged in the process of cooking methamphetamine. On or about February 28, 2014, Deputy Sullivan along with Deputies B. Hill, Greg O'Shea and Raylene Busby responded to the area of 1267 East Carlton Acres Drive and set up surveillance. Over the next couple of hours various vehicles were in and out of the residence, staying for a short amount of time and then leaving. At one point a dark gray Ford Expedition pulled in behind the privacy fence and someone shut the gate behind it. Parked in the yard of the residence was a dark blue Toyota Tundra pick up. The owner of the vehicle came back to a known methamphetamine cook/user about whom Deputy Sullivan had personal knowledge.  Deputy Hill had walked up to

2

the back of the residence, in the woods, and observed suspicious behavior of a white female in blue jeans and a brown hoodie along with two white males as they walked in and out of a shed in the back yard. One white male subject was wearing a red shirt with blue jeans and walked to the green older model Ford Mustang with the tan cloth top several times. These observations are consistent with what the deputies commonly observe in connection with individuals engaged in the use, clandestine manufacture and distribution of methamphetamine.

On or about March 11, 2014 at approximately 0930 hours, Deputy Sullivan received a call from a reliable confidential informant (RCI) who advised that a white male subject known as Thomas Jason Strickland, aka "J-Red" was in possession of a large amount of methamphetamine ice. Strickland told the reliable confidential informant that he (Strickland) could sell the reliable confidential informant three ounces of methamphetamine ice for $4,000. The reliable confidential informant told Strickland that he (the RCI) did not have that kind of money but that he (the RCI) would have to contact some people to see if they could come up with the money.

The RCI then contacted Deputy Sullivan. Deputy Sullivan then drove to the location of Strickland's residence on East Carlton Acres Drive. He observed that all three vehicles previously observed in the surveillance that had been conducted at that location on February 28 were present. There was also a white 2001 GMC Yukon displaying an Alabama tag that came back in the name of Calvin James Monceaux, III, who was known to the deputies to be a meth cook and user. Over the next hour, various vehicles pulled into and left the residence, staying for only short periods of time.

A short time later, the white GMC Yukon registered to Calvin James Monceaux, III, left the residence. Deputy J.T. Sullivan then began to follow the Yukon to the area of Halls Mill and McVay Roads. Upon arrival at this location, Deputy J.T. Sullivan observed the driver of the

Yukon meet with the driver of a silver Dodge dually pickup, pulling up driver's side door to driver's side door.   A few minutes later, a heavy rain began which caused the driver of the Dodge dually pickup to pull into a parking space and then get into the passenger's side of the white GMC Yukon. The driver of the dually sat in the white GMC Yukon, for a couple of minutes, then exited, returned to the Dodge dually and left the area.   Based on his experience and training, Deputy J.T. Sullivan believed that a drug transaction had taken place.   Deputy J.T. Sullivan then left the area and returned to the location at 1267 East Carlton Acres Drive.

At approximately 1200 hours, the reliable confidential informant then placed a call to Strickland, and told Strickland that the RCI had some people that wanted to try out an eight ball (3.5 grams) of the methamphetamine ice that Strickland had talked about earlier.   Between 12:30 -12:40 p.m., Deputy Hill observed a white male subject exit and leave the residence on East Carlton Acres Drive.   Deputies Sullivan, Clinton Law, and Greg O'Shea then followed the driver of the green older model Ford Mustang with the tan soft convertible top to the meeting with the RCI on Lott Road.

A short time later, the RCI contacted Deputy Sullivan and advised him that Strickland had brought a total of three (3) ounces of methamphetamine ice to the RCI but only left one (1) ounce. The RCI stated Strickland wanted to leave the entire amount with the RCI. The RCI advised Strickland that he did not want the entire amount at this time but would contact him as soon as the RCI could determine if his "people" wanted more.   The RCI would then contact Strickland to get the other two ounces of methamphetamine ice.   Strickland was kept under constant surveillance during the time that he left the residence until he met with the RCI. Deputy Sullivan retrieved the methamphetamine ice from the RCI that was left by Strickland.   The methamphetamine ice field tested positive for methamphetamine.

4

On the same day, March 11, 2014, at approximately 3:50 p.m., a state search warrant was obtained for Strickland's residence on East Carlton Acres Drive.   Using the RCI, the deputies arranged for Strickland to deliver the other two ounces of methamphetamine ice. The Mobile County Sheriff's Office Narcotics Unit conducted a take down on Strickland and seized the two ounces of methamphetamine ice.   The methamphetamine ice field tested positive for methamphetamine.   Strickland was read his Miranda rights and stated he understood his rights. Strickland gave Deputy Sullivan information concerning a subject named "Adrianne" who was receiving methamphetamine ice from the Montgomery area and selling in the Mobile area.   He stated he purchased meth ice from her in the past and could still purchase ice from her.   Strickland gave "Adrianne's" vehicle description and directions to her residence.

Strickland stated that he had gotten the methamphetamine ice from "Jamie," subsequently identified as Calvin James Monceaux, III, and that he owed him $3,000.00 for the ICE methamphetamine.   Strickland also stated that "Jamie" was in possession of a large amount of methamphetamine ice.   Strickland stated that the ice was in the GMC Yukon.   This vehicle is registered in Monceaux's name.   The deputies elected not to execute the state search warrant for 1267 E. Carlton Acres Drive at that time.

On March 13, 2014, Deputy Sullivan went to the residence located at 5916 Theles Drive, Mobile, Alabama.   The 2001 GMC Yukon was parked at this location in the yard of the residence. Also parked in the yard was a Ford Expedition.   Strickland also told the deputies that "Jamie" also drove a Ford Expedition.

On March 13, 2014, a state search warrant was obtained for Monceaux's residence located at 5916 Theles Drive, Mobile, Alabama.   Strickland contacted Deputy Sullivan and stated that Monceaux was at his residence on Carlton Acres Drive and wanted his $3,000.   Subsequently,

5

Deputies executed the previously obtained search warrant for Strickland's residence at 1267 E. Carlton Acres Drive.   Sergeant Jason Arendall used his trained drug detecting canine, Orry, to conduct a free air search of the vehicles on the premises and of the vehicles on the premises, the canine, Orry, alerted only on Monceaux's vehicle.   Deputies discovered that Monceaux had approximately 1 gram of methamphetamine ice, 1 ½ Xanax pill, and $943 in U. S. Currency located in his vehicle. Monceaux was placed under arrest and read his Miranda rights. The methamphetamine ice field tested positive for methamphetamine.

Deputies left the Carlton Acres Drive residence and traveled to Monceaux's residence located at 5916 Theles Drive. The search warrant obtained for this residence was subsequently executed at approximately 5:45 p.m.   During the search of the residence, two females, Tamara Jeaninne Turner, also known as "Biker Chick," who was identified as the homeowner of the premises, and Candice Clark, were encountered.   These two females were stopped at a vacant house two doors down from 5916 Theles Drive with the Ford Expedition previously observed at the residence.   Candice Clark was found in possession of a methamphetamine pipe and a small metal pill holder filled with suspected methamphetamine ice (approximately 4.2 grams and the methamphetamine ice field tested positive for methamphetamine). Upon execution of the search warrant at 5916 Theles Drive, deputies discovered approximately 5 ounces of methamphetamine ice in the residence, which field tested positive for methamphetamine.   The deputies also found drug paraphernalia (i.e., pipes, scales, etc.), approximately 1 ounce of marijuana, drug notes, and approximately $700 in U.S. currency.   Monceaux was transported to 5916 Theles Drive from Carlton Acres Drive.   Monceaux and Turner were arrested on state charges.   Candice Clark was arrested on state charges.   All subjects were transported to Mobile County Metro Jail.

On March 12, 2014, Deputy Sullivan followed the directions given to him by Strickland to

6

"Adrianne's" residence and obtained the tag number from the vehicle parked in the driveway. The Alabama tag was registered to Adrianne Davis Miller with a Montgomery address. Strickland further stated that Adrianne Miller was due to receive a shipment of methamphetamine ice from her supplier, also reportedly from the Montgomery area.

On March 13, 2014, it was discovered that Adrianne Miller and Malcolm David Thomas were in a hotel room at a hotel in Satsuma, Alabama.   The deputies engaged in surveillance at the hotel and identified vehicles and another residence associated with these subjects.   They stopped one of the vehicles and recovered a baggie containing methamphetamine ice from the driver.   The driver said the methamphetamine ice was given to him by Malcolm David Thomas.   The driver also said he went to the residence the deputies identified in the surveillance with Thomas, where Thomas delivered a black, "over the shoulder" gym type bag which contained about nine ounces of methamphetamine ice and a large amount of pseudoephedrine pills.   He stated that Thomas was going back to the hotel in Satsuma and picked up Adrianne Miller, and that they were going back to the man's house to pick up the methamphetamine ice and the pills.   The driver told the deputies that Thomas and Miller may have some more methamphetamine ice on them, and that he knew that Thomas took some methamphetamine ice out of the bag before they left the man's house.

Deputy Sullivan had returned to the hotel and discovered that the hotel management staff were evicting Adrianne Miller due to a flooding of the room, 201, which leaked into the room below.   The maintenance staff had cleaned up the flooded room and removed the trash, which was still in the maintence staff cart.   Deputy Sullivan retrieved the trash from the cart and discovered a large amount of empty boxes of pseudoephedrine pills and the blister packs along with paperwork with the names of Malcolm David Thomas and Adrianne Leigh Davis.

Deputies obtained a state search warrant for the residence and recovered the black bag

7

described by the driver of the vehicle.   The homeowner told the deputies that Thomas stated he would be back later to retrive the bag.   The deputies discovered 43 grams of methamphetamine ice in a gym bag, as welll as a sandwich bag full of pseudoephedrine pills (96), digital scales, and two shotguns.   The drugs field tested positive for methamphetamine.

After a period of time, surveillance units observed that Thomas traveled back to the hotel in the red Honda.   Thomas and Miller got into separate vehicles and departed the hotel parking lot, whereupon marked units stopped them.   Miller was driving the red Honda, which had an improper tail light.   Miller was read her Miranda rights and agreed to cooperate with the deputies. Miller was asked about her involvement with selling and distributing methamphetamine ice. Miller stated she was going to receive a shipment of meth ice later that day from her source which she identified as Jeffrey Marks.   Miller agreed to cooperate in the investigation, and the deputies were able to arrest Marks and his wife when they brought approximately 150 grams of methamphetamine ice and a firearm to a hotel room in Mobile to meet with Miller.

From the investigation, through the post-Miranda statement provided by Miller, and from a Verizon payment receipt reflecting a payment on Marks' account made in Mobile, the officers learned that Marks did come to Mobile about once a week.   According to Miller, he brought with him 8 or 9 ounces of meth every week for six months.

The parties agree that the defendant is accountable for approximately 88.5 grams of methamphetamine ice as relevant conduct.


AGREED TO AND SIGNED.

Respectfully submitted,

KENYEN R. BROWN
UNITED STATES ATTORNEY

Date: _9/9/2014_

Vicki M. Davis, Criminal Chief
Assistant United States Attorney

Date: _9/8/14_

Gloria A. Bedwell
Assistant United States Attorney

Date: _9/10/14_

Thomas J. Strickland
Defendant

Date: _9/10/14_

Daniel L. McCleave, Esq.
Attorney for Defendant

9

Case 1:14-cr-00054-CG-B   Document 108   Filed 09/11/14   Page 23 of 23

## Pleas and Plea-Related Documents
1:14-cr-00054-CG-N USA v. Marks et al

### U.S. District Court

### Southern District of Alabama

### Notice of Electronic Filing

The following transaction was entered by McCleave, Daniel on 9/10/2014 at 3:29 PM CDT and filed on 9/10/2014

**Case Name:**       USA v. Marks et al
**Case Number:**     1:14-cr-00054-CG-B
**Filer:**
**Document Number:** 106

**Docket Text:**
**PLEA AGREEMENT as to Thomas Jason Strickland With Factual Resume (McCleave, Daniel)**

**1:14-cr-00054-CG-B-8 Notice has been electronically mailed to:**

Daniel L. McCleave     dan@madlaw.net, shannon@madlaw.net

Gloria A. Bedwell     gloria.bedwell@usdoj.gov, dawn.lavender@usdoj.gov

Gordon G. Armstrong , III     gga3@arserv.com

J. Clark Stankoski     clarkstankoski@mac.com

James B. Pittman , Jr     james@jbplaw.com, assistant@jbplaw.com, jennifer@jbplaw.com, karen@jbplaw.com

Latisha V. Colvin     latisha_colvin@fd.org, sandra_kelly_bonds@fd.org

Raymond Lloyd Bell , Jr     rbell@belllawfirm.net, jwatson@belllawfirm.net

**1:14-cr-00054-CG-B-8 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1026491878 [Date=9/10/2014] [FileNumber=1948189-0
] [7db603809b887e365ae6cc796e75b96b6c95e66d735a140ea1675436c99a779bf6c
d7bb4a1f13e4d744c1ee9b5110ceebf983684f229816360eccd8511460776]]